IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**VICKY L. WESTBROOK,**

   Plaintiff,

vs.           Civ. No. 99-1472 MV/DJS

**WILLIAM A. HALTER,[1] Acting
Commissioner of Social Security,**

   Defendant.

**<u>MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION</u>[2]**

  l. Plaintiff invokes this Court's jurisdiction under 42 U.S.C. §405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner determined that Plaintiff is not eligible for disability insurance benefits.  Plaintiff moves this Court for an order reversing the Commissioner's final decision or remanding this

---

  [1] Pursuant to Fed.R.Civ.P. 25, William A. Halter, Acting Commissioner of Social Security is substituted for Kenneth S. Apfel, Commissioner, as the Defendant in this action.  Mr. Halter was nominated by President Bill Clinton on October 1, 1999, and confirmed by the United States Senate on November 10, 1999.  He was the first confirmed Deputy Commissioner of Social Security.

  [2] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. Section 636(b)(1), file written objections to such proposed findings and recommendations.  A party must file any objections with the clerk of the district court within the ten day period allowed if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

matter for a rehearing.  The Court will review the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner applied correct legal standards in making his findings.  <u>Williams v. Bowen</u>, 844 F.2d 748 (10th Cir. 1988).

## Administrative History

2.    Plaintiff applied for Social Security Disability Insurance Benefits on October 25, 1996 alleging a disability commencing on May 31, 1996.  Tr. 52 and 61.  The application was denied initially and on reconsideration.  Plaintiff requested and received a *de novo* review before an administrative law judge (ALJ).  The ALJ found that Plaintiff was not disabled.  Tr. 28.  The Appeals Council denied Plaintiff's request for review.  Tr. 6.  The decision of the ALJ therefore became the final decision of the Commissioner for judicial review purposes.

## Statement of the Facts

3.    Plaintiff alleges a disability due to weakness, headaches, multiple arthralgias, fibromyalgia, HLA B27 arthropathy, degenerative arthritis, disc disease of the lumbar spine, and depression.  Tr. 61.  Plaintiff was born on January 7, 1953.  She has had over two years of college.  Her past work is as an administrative assistant and other clerical positions.  Tr. 65.

## Issues

4.    Plaintiff alleges the ALJ erred because the substantial

evidence does not support the ALJ's decision and his decision is contrary to law.  Specifically, Plaintiff alleges that: 1) the ALJ's promise of benefits denied Plaintiff due process of law; 2) the ALJ improperly discounted Plaintiff's treating physicians' opinions; 3) the ALJ's finding that Plaintiff's mental impairment is not severe is error; 4) the ALJ's credibility findings are contrary to the evidence and the law; and 5) the ALJ erred in not evaluating the physical and mental demands of the Plaintiff's past relevant work.

**The Standard of Review**

5.    The function of this Court on review is not to try the Plaintiff's claim *de novo*, but to determine upon the whole record whether the Commissioner's decision is supported by substantial evidence.  Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is more than a scintilla but less than a preponderance of the evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971).   It is such relevant evidence as reasonable minds might accept as adequate to support a conclusion.  Id.   It is well settled that if there is substantial evidence to support the Commissioner's decision then that decision must be upheld.  However, the district court should not blindly affirm the Commissioner's decision but must instead scrutinize the entire record to determine if the Plaintiff's claim is supported by substantial evidence and the law has been correctly applied.  Hogan v. Schweiker, 532 F.Supp. 639, 642 (D.Colo. 1982).

6.    The Plaintiff must first make a *prima facie* showing of an impairment which effectively precludes her from returning to her past work.   Once that showing is made, the burden shifts to the Commissioner to show:  (1) that the Plaintiff, considering her age, education, work experience and physical shortcomings, has the capacity to perform alternative jobs and (2) that these specific types of jobs exist in significant numbers in the economy.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); Salas v. Califano, 612 F.2d 480, 482-83 (10th Cir. 1979); Gardner v. Brian, 369 F.2d 443, 446-47 (10th Cir. 1966).

7.    To regularize the adjudicative process, the Social Security Administration promulgated regulations which establish a "sequential evaluation process" to determine whether a claimant is disabled.   20 C.F.R. §404.1520.   At the first three levels of the sequential evaluation process, the claimant must show: (1) that she is not engaged in substantial gainful employment;  (2) that she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; and (3) that her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1.   If the claimant cannot show that she has met or equaled a listing, she must show at step four that she is unable to perform work she had done in the past.   At the fifth step, the burden of proof shifts to the Commissioner to show that the claimant is able

to perform other substantial gainful activity considering her age, education, and prior work experience.  If a determination of disabled or not disabled is found at any step, further inquiry is not required.  20 C.F.R. §404.1520.

8.   Upon reaching the fifth step of the sequential evaluation process, the Medical-Vocational Guidelines (grids) are used in determining whether disability exists.  20 C.F.R. Part 404, Subpt. P, App. 2.   These grids reflect the existence of jobs in the national economy at various residual functional levels by incorporating administrative notice of some occupational publications and studies.  20 C.F.R. §404.1566(d).  This aids the Commissioner in determining what specific job types exist in the national economy for the claimant.  To apply the grids, the ALJ must make findings of fact as to age, education, work experience, and residual functional capacity.  20 C.F.R. §§404.1545, 404.1563-.1565. These findings of fact are factored into the grids to produce a factual conclusion of disabled or not disabled.    20  C.F.R. §404.1569.  The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment.  20 C.F.R. Part 404, Subpt. P, App. 2, §200.00(e)(2).

9.   Where a claimant presents evidence of both exertional and nonexertional impairments (such as pain, inability to maintain concentration, and substance abuse), the grids are not conclusive but merely form a framework for disability determination.  Id.  In that situation, the ALJ must make findings on how much a claimant's

5

work ability is further diminished by the nonexertional limitations.
Id.  If the claimant's nonexertional limitations are significant
enough to reduce further his or her work capacity, the ALJ may not
rely upon the grids but instead must give full consideration to all
relevant facts, including vocational expert testimony if necessary,
in determining whether the claimant is disabled. Id.; Channel v.
Heckler, 747 F.2d 577, 583 (10th Cir. 1984).  However, the mere
presence of nonexertional impairments does not automatically
preclude reliance on the grids.  Ray v. Bowen, 865 F.2d 222, 225
(10th Cir. 1989); Gossett v. Bowen, 862 F.2d 802, 807-08 (10th Cir.
1988); Channel, 747 F.2d at 582 n. 6.

**Discussion**

10.    Plaintiff argues she was denied procedural due process.
Plaintiff asserts that the ALJ said, in the administrative hearing,
that he would grant her benefits.  In reliance of this, Plaintiff
argues Plaintiff's counsel did not elicit additional testimony from
the Plaintiff.  Thus, Plaintiff argues that due process requires a
supplemental hearing to complete her testimony.  Defendant asserts
that the ALJ did not state that he would find the Plaintiff
disabled.

11.    The fundamental requirement of due process "is the
opportunity to be heard at a meaningful time and in a meaningful
manner."  Mathews v. Eldridge, 424 U.S. 319, 333 (1976).  Plaintiff
was given notice and testified at the hearing.  Thus, even assuming

6

that the ALJ said on the record he would find that the Plaintiff was

disabled does not support Plaintiff's argument that she was denied

due process.  Further the record shows that the ALJ did not state he

would find that the Plaintiff was disabled.  The record shows that

the ALJ was sympathetic because the Plaintiff suffered from pain.

The ALJ did not say he had made a decision.  Rather, the ALJ stated

on the record that Plaintiff would get his decision in a couple of

months.  Tr. 276.  Plaintiff's misplaced reliance on the ALJ's

statements during the hearing does not violate her due process as

Plaintiff was not denied any opportunity to be heard.

        12.     Plaintiff argues that the ALJ improperly rejected

Plaintiff's treating physicians' opinions. Plaintiff's treating

physicians do not agree as to whether she is able to work.  The ALJ

has a duty to resolve the conflicts in the record.  Richardson v.

Perales, 402, U.S. 389, 399 (1971).  As demonstrated below, the ALJ

properly resolved the inconsistencies in the treatment notes of

Plaintiff's treating physicians.

        13.     Plaintiff relies extensively on a letter written to

Plaintiff's attorney on February 23, 1999 from Robert Quarmby, M.D.

Mr. Quarmby unequivocally states that Plaintiff is not able to work.

However, his records do not unequivocally support such a finding.

In May of 1999 Dr. Quarmby reported that Plaintiff had progressive

improvement since treatment.  Tr. 292.  In June of 1999, Dr. Quarmby

noted that Plaintiff stated she felt better and denied having a

headache.  Tr. 187.  Dr. Quarmby is a pain specialist.  He wrote in

his notes that Plaintiff responded well to injection therapy.  Tr. 189, 291 and 303.  There are no objective tests in his records to support his conclusions.  He merely and consistently gave her electrical stimulation and injections which appeared to give Plaintiff some relief.  The ALJ properly discounted his opinion. Castellano v. Secretary, 26 F.3d 1027, 1029 (10th Cir. 1994).

14.    Plaintiff also relied on a report by Dr. Rousseau to support her claim.  As the ALJ corrected noted these reports were prepared by her treating physician for Plaintiff's insurance carrier, CIGNA.  The ALJ further stated he did consider these reports; however, the standard of the disability carrier for granting benefits may be different from the social security regulations.  Tr. 27.  Further, these statements are not supported by Dr. Rousseau's treatment notes or objective medical evidence. Dr. Rousseau wrote in these reports that Plaintiff was unable to work because of weakness, pain and depression.  The objective medical evidence are x-rays, MRI's and various blood tests. Plaintiff's MRI of the thoracic and cervical spine showed no evidence of herniated nucleus pulposus, neuroforaminal stenosis, or nerve root compression.  Tr. 158-159.  The MRI of her pelvis, right hip and femur showed no evidence of bony or soft tissue abnormalities.  Tr. 160.  She does have degenerative disc disease but no evidence of recurrent disc herniation.  Plaintiff's alleged depression is discussed below.

15.    Dr. Rousseau referred the Plaintiff to Eddie Benge, M.D.

8

for her arthritis.  He found that Plaintiff was positive for the HLA B27 gene.  He did not however diagnose her with an HLA B27 associated disorder.  If she did have it he said that she would not be completely incapacitated by it and that her symptoms would "wax and wane."  Tr. 96.  In July of 1996 he found that Plaintiff could continue to work if she not required to walk up and down a flight of stairs.

16.     Plaintiff argues that the ALJ improperly found Plaintiff's alleged mental impairment to be not severe at step two. The Social Security Act defines "physical or mental impairment" as an "impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. Sec. 423(d)(3).  The clinical findings in the record do not support the existence of a severe mental impairment. <u>Moon v. Sullivan</u>, 923 F.2d 1175, 1182 (6th Cir. 1990).  The only medical evidence is that Dr. Rousseau treated Plaintiff's symptoms of depression with medication.  Dr. Rousseau did not refer her for evaluation or treatment by any mental health professionals.  Further, Dr. Rousseau is not a mental health specialist.  Plaintiff did testify that the week before the administrative hearing she went to see Dr. Katherine Miller for her depression.  There are no treatment notes from Dr. Miller in the record.

17.  Further, Plaintiff's statements regarding her activities and relationships do not demonstrate the functional limitations from

depression that would preclude her from working.  She goes to the VFW and visits with her grandmother.  In 1998 she went on a extended vacation to Montana and felt reasonably well.  Tr. 356.  Further, in a Report of Contact on December 5, 1996, Plaintiff stated she had made no suicide attempts or had any ideation and had no hallucinations or delusions.  She also reported that her relationship with her husband and brother were "great" and her relationship with her children was "real good."  Tr.  Tr. 70.

18.    Plaintiff next argues that the ALJ failed to give reasons for rejecting Plaintiff's credibility.  As correctly stated by the Plaintiff credibility findings must be "'closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" <u>Kepler v. Chater</u>, 68 F.3d 387, 391 (10th Cir. 1995).  The ALJ's primary reason for his finding on credibility is her allegations of frequent migraine headaches.  As noted by the ALJ, this is wholly inconsistent with the record.  A review of the treatment notes in the record show she rarely even mentioned headaches to any of them.  Further no changes were made in her medication for headaches.  The ALJ further based his credibility finding on his "observations" of the Plaintiff.  It is clear from his findings that the ALJ did not base his credibility finding solely upon Plaintiff's demeanor at the hearing.  Rather he considered the record as a whole and found Plaintiff not fully credible.  This is permissible. <u>Casias v. Secretary of Health and Human Services</u>, 933 F.2d 799, 801 (10th Cir. 1991)("We defer to the

ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.")

19.     Lastly, Plaintiff argues the ALJ did not review the physical and mental demands of Plaintiff's past relevant work.  The decision of the ALJ shows otherwise. The analysis required in set out in <u>Winfrey v. Chater</u>, 92 F.3d 1017, 1023 (10th Cir. 1996).  The ALJ must evaluate the Plaintiff's residual functional capacity, both physical and mental.  In great detail the ALJ reviewed the objective medical evidence regarding Plaintiff's alleged physical and mental impairments.  Tr. 22-25.  The ALJ specifically found that she could not do heavier lifting than that required of light work.  He further stated that his finding was supported by the opinions of the medical consultants, Drs. Powell and Nickerson.  Tr. 170-177.  The ALJ must also determine the physical and mental demands of the past relevant work.  <u>Winfrey</u>, 92 F.3d at 1024.  Again, the record is clear that the ALJ had this information.  Plaintiff described her basic duties in her disability report.  Tr. 65.  The ALJ also specifically questioned Plaintiff at the administrative hearing about the demands of her past work.  Tr. 259-261.

20.     To conclude, disability requires more than the mere inability to work without pain.  <u>Gossett v. Bowen</u>, 862 F.2d 802, 807 (10th Cir. 1988).

## Recommended Disposition

For these reasons, I recommend that Plaintiff's Motion to Remand be denied.

_____
**Don J. Svet**
**United States Magistrate Judge**